THE STATE OF KANSAS, *ex rel. S. B. Bradford, Attorney General*, v. THE BOARD OF COMMISSIONERS OF HAMIL-TON COUNTY, *et al.*

1. COUNTY-SEAT ELECTION; *Mandamus; Jurisdiction of Supreme Court.* In an action of mandamus, brought in the supreme court in the name of the state of Kansas, by the attorney general, to compel the county officers of a certain county to hold their offices at the town of K., which is alleged to be the county seat of the county, *held*, that the supreme court has jurisdiction to hear and determine the case, although in the determination thereof it may be necessary to determine the result of an election held in the county to permanently locate the county seat of such county, and for frauds perpetrated in one of the townships of such county, to wholly ignore the returns from such township and the canvass thereof, and the declaration made by the board of canvassers that a place other than K. had become by such election the permanent county seat of the county.

2. ——— *No Registration of Voters, When.* Chapter 89 of the Laws of 1881, which provides generally for the registration of voters at county-seat elections, has no application to the first election held in a newly-organized county.

3. RETURNS, ETC., *Wholly Ignored for Fraud.* Where an election has been held in a county for the permanent location of the county seat, and it appears from the evidence that more than two-thirds of the votes cast in one township, as shown by the returns from that township, were illegal and fraudulent, and it cannot be accurately ascertained how many legal votes were polled in such township; and other frauds were committed, and these frauds were participated in by the

judges and the clerks of the election, and others, *held*, in an action of mandamus, such as is mentioned in the first number of this syllabus, that the returns from the aforesaid township and the canvass thereof, and the declaration of the canvassing board, will be wholly ignored by the court, and not considered as any evidence in determining the result of the election.

## Original Proceedings in Mandamus.

ACTION brought in this court, April 21, 1886, by *The State* against *The Board of Commissioners of Hamilton County*, and the county clerk thereof, to compel the defendants to hold their offices at the town of Kendall, which is alleged to be the county seat of that county. The material facts are stated in the opinion, filed at the October, 1886, session of the court.

*B. F. Simpson*, and *John M. Johnson*, for plaintiff.

*Wm. O. McKinlay*, county attorney, and *Webb & Spencer*, for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This is an action in the nature of mandamus, brought originally in the supreme court in the name of the state of Kansas on the relation of S. B. Bradford, attorney general, against the board of county commissioners, and Thomas H. Ford, county clerk, of Hamilton county, to compel the defendants to hold their offices at the town of Kendall, which is alleged to be the county seat of said county. An alternative writ of mandamus was allowed and issued, which alleges, among other things, that the county of Hamilton was organized on January 29, 1886; that the town of Kendall was designated by the governor as the temporary county seat; that the first election for county and township officers and for the permanent location of the county seat was held on April 1, 1886; that returns were made of such election; that such returns were canvassed by the board of county commissioners on April 16, 1886; and that such returns and the canvass thereof show that votes were polled in the following town-

41— 35 KAS.

ships for the following towns as a permanent county seat, to wit:

| TOWNSHIPS VOTING. | TOWNS VOTED FOR. | | | | Total. |
|---|---|---|---|---|---|
| | Coolidge. | Hartland. | Kendall. | Syracuse. | |
| Coolidge | 452 | | 1 | 10 | 463 |
| Grant | 29 | 83 | 37 | 34 | 183 |
| Hartland | 1 | 97 | 5 | 1 | 104 |
| Kendall | | | 251 | 1 | 252 |
| Stanton | 4 | | 54 | 37 | 95 |
| Syracuse | | | 2 | 1,176 | 1,178 |
| Totals | 486 | 180 | 350 | 1,259 | 2,275 |

It is claimed, however, on the part of the plaintiff, that for reasons which will hereafter be stated, this election was illegal, fraudulent and void, and that the county seat of Hamilton county still remains temporarily located at Kendall, where it was temporarily located by the governor. The alleged fraud is confined exclusively to Syracuse township. It is alleged that in that township not more than 350 legal votes could have been polled, from the fact that not more than 350 legal voters resided there at that time, and that all the other votes apparently polled in that township, as shown by the aforesaid returns and the canvass, are illegal and fraudulent. The defendants have made a return to the alternative writ, and in such return have substantially admitted all the allegations contained in the writ, except that there was fraud, illegality or irregularity in the conduct of the election in Syracuse township, and they allege that in that township the election was regular and legal and valid, and that the number of votes which the returns and the canvass show were polled, were in fact polled, and that by such election and canvass the town of Syracuse became the permanent county seat of Hamilton county, and that the defendants are now holding their offices there rightfully, legally and properly. A trial was had before the court, and upon the facts admitted, the evidence introduced, and the law of the case, we shall now proceed to decide the case and the questions involved therein.

I. It is claimed by the defendants that the supreme court

has no jurisdiction to hear and determine this case; and this claim is made upon the following grounds: First, the plaintiff has another plain and adequate remedy; second, this court cannot go behind the election returns and the canvass thereof and declare them incorrect or invalid; third, the county seat having been declared to be permanently located at Syracuse, it is the duty of the defendants, in obedience to that declaration and without questioning its force or authority, to hold their offices there until it has been _settled by some proper judicial proceeding that the county seat is not located at that place; and possibly, also, fourth, the supreme court "cannot control judicial discretion" by a writ of mandamus, and to require that the defendants in this case shall remove their offices from Syracuse to Kendall, would be to control judicial discretion.    We think the claim that the supreme court has no jurisdiction to hear and determine this case is untenable.    This action is prosecuted in the name of the state of Kansas, by the attorney general, who has the right to prosecute and defend in the name of the state and for the state, and the state unquestionably has the right to require that all county officers shall hold their offices at the county seat; and we know of no other plain and adequate remedy which the state may resort to for this purpose.    The fact that the statute (sec. 5 of the act relating to the organization of new counties) provides that, after the canvass of the election returns has been had, and a particular place declared by the canvassing board to be the county seat, "That any person or persons interested, and claiming that the place so declared the county seat was not made such by a majority of the legal votes cast at such election, may, upon giving full security for all the costs of the contest in case of their failure therein, contest such election before the district court of the county or of that county to which the same may be annexed for judicial purposes," does not give to the state of Kansas any other plain or adequate remedy, or indeed any remedy, to compel the county officers to hold their offices at the place where the county seat is in fact located.    Nor are the election returns or the canvass

thereof ever considered conclusive, but only *prima facie* evidence of what they purport to show. The board of county commissioners, acting as a board of canvassers in canvassing election returns, do not act as a judicial tribunal, but only act as ministerial officers. This is so held by all the courts. ( *The State v. Marston*, 6 Kas. 534; *Patton v. Coates*, 41 Ark. 111.) And where an election is so irregular or fraudulent as to be absolutely void, as is claimed in this case, and a question which we shall hereafter consider, it may of course be treated as void in any judicial proceeding or elsewhere; and such treatment will not be a control of judicial discretion in any sense. We think the supreme court has the power in this action to require that the county officers shall hold their offices at the place where the county seat may in fact and in law be found to be located. The action of mandamus in this state includes both the old common-law proceeding of mandamus, and the action on the case for a false return. ( *The State v. Comm'rs of Jefferson Co.*, 11 Kas. 68.)

II. The plaintiff in this action claims that the election is void for the reason that no registration of the electors of the different voting precincts was had, as required by chapter 89 of the Laws of 1881. This chapter we think has no application to this case. This chapter provides generally for the registration of voters at county-seat elections; but this chapter has no reference, unless by implication, to county-seat elections in the organization of new counties. This claim of the plaintiff we think is untenable. Under § 1 of this chapter, the persons authorized by law to act as judges of election for any precinct are required to meet on Tuesday three weeks before the election, to act as a board of registration, and to make the registry lists. Now when new counties are organized, there are no persons authorized by law to act as judges of election prior to 9 o'clock of the morning of the first election, and therefore there are no persons authorized to make registration lists. Section 4 of the act relating to the organization of new counties and to the first elections therein, (Comp. Laws of 1879,

¶ 1362,) is the only act that provides how the election boards at such elections shall be selected, and it provides that—

"The voters at such election may assemble at 9 o'clock A. M. in each election precinct; shall select from among themselves three judges and two clerks for the election, who, before they enter upon the discharge of their duties, shall take the oath required by law of judges or inspectors and clerks of election, any one of whom may administer such oath to the others," etc.

It will been seen from a reading of this last-mentioned section, that judges and clerks of election are expressly provided for by such section, and therefore that there is no room for any other law to apply by implication. Section 2 of the aforesaid registration act also provides that the registration board of each precinct shall in making the registration list use "the poll-book kept in said precinct at the last preceding election," when in fact there is no such poll-book in new counties, and could not be prior to the first election. Said § 2 also provides that the original registry list shall be filed in the office of the township clerk of the township, when in fact there is no such officer at such a time, and could not be under the statutes. Section 3 of the act provides that in certain cases the township trustee may appoint judges of election to make the registration, but prior to the first election in the organization of new counties there can be no township trustee. Section 4 provides that the registration board shall meet on Tuesday of the week preceding the election and correct and revise the registration lists; and section 11 provides that these lists shall at all times be open to public inspection at the office of the authorities in which they shall be deposited, when in fact prior to the first election in new counties there can be no authorities with which the lists might be deposited. There are several other provisions in the act relating to the registration of electors for the permanent location or relocation of county seats which are inconsistent with the provisions of the act relating to the organization of new counties; and if such registration act should be made to apply to elections held under the act relating to the organization of new counties, it would

be necessary to ignore and even to violate some of the provisions of either one or the other of such acts. We do not think that the registration act can apply to the first election held in a newly-organized county. Where a statute relating to registration, or indeed to anything else, cannot in the nature of things be made to apply, it must be held that it does not apply, and that the legislature did not intend that it should apply. (*Campbell v. Braden*, 31 Kas. 754.)

III. The plaintiff claims that the election in Syracuse township was so fraudulent that the returns from that township are not entitled to any consideration. It appears from the evidence that there could not have been more than 350 legal voters residing in that township at the time of the election, and in all probability there were not that many; while the returns from Syracuse township and the canvass of such returns show that there were 1,178 votes polled in that township. Therefore at least 828 of the votes shown to have been polled by such returns and canvass must have been illegal and fraudulent. It appears from the election returns from the various precincts of Hamilton county, that at that election the town of Coolidge received 486 votes for county seat, the town of Hartland received 180 votes for county seat, the town of Kendall received 350 votes for county seat, and the town of Syracuse received 1,259 votes for county seat; and the town of Syracuse received all the votes polled in Syracuse township except two, hence estimating that there were 828 illegal votes polled in Syracuse township, and that the town of Syracuse received 826 of such votes, the town of Syracuse could not have received more than 431 legal votes for the county seat, a less number than the town of Coolidge received, and a much less number than a majority of all the votes cast at that election, and such a majority is required by the statute to permanently locate the county seat of any county. (Act relating to the organization of new counties, § 5.) The names fraudulently appearing upon the election returns of Syracuse township as the names of legal voters of such township, and canvassed as such, were made up by placing on the poll-books

of such township fictitious names, the names of the same persons two or three times, the names of dead persons, and the names of persons residing elsewhere. For illustration, the names of 133 voters of Silver Lake township, Shawnee county, were placed upon the poll-books, and also the names of several residents of the city of Topeka, among whom were two well-known Topeka lawyers; and also the names of 43 voters of Malvern township, Mills county, Iowa; and also the names of several persons two or three times; and even William Penn was made to vote at that election. Nobody knew of any such person as William Penn residing in that county. Besides, it was actually shown that at least five persons in Syracuse township voted for the town of Kendall, while the poll-books and canvass show that only two so voted. The fraudulent names were interspersed among the names of genuine and legal voters, or rather, *vice versa*, as the fraudulent names vastly outnumbered the names of the genuine legal voters. We are inclined to adopt the views of the plaintiff, and hold that the election in Syracuse township was so fraudulent that the returns therefrom and the canvass thereof must be wholly ignored. This is entirely consistent with the views heretofore expressed by this court in the following cases: *The State v. Marston*, 6 Kas. 524, 538; *Russell v. The State*, 11 id. 308, 322; *The State v. Stevens*, 23 id. 456. And these views seem to be sustained by the decisions of courts elsewhere: *Patton v. Coates*, 41 Ark. 111; *Thompson v. Ewing*, 1 Brewst. 67, *et seq.; Wallace v. Simpson*, 4 id. 454; *In re Duffy*, 4 id. 531, *et seq.; People v. Thacher*, 55 N. Y. 525; McCrary on Elections, § 436, *et seq.*, and cases there cited; *Howard v. Cooper*, Contested Elections in Congress, 1834 to 1865, p. 275; *Blair v. Barrett*, id. 308; *Knox v. Blair*, id. 521; *Washburn v. Voorhees*, House Miscellaneous Contested Elections, 1865 to 1871, p. 54; *Reid v. Julian*, id. 821. Judge McCrary, in his work on Elections, uses the following language:

"SEC. 436. Although the return of the vote of a given precinct, made in due form, and signed by the proper officers, is the best evidence as to the state of the vote, yet it may be im-

peached, on the ground of fraud or misconduct on the part of
the officers of the election themselves, or on the part of others.
In election cases, however, before a return can be set aside,
there must be proof that the proceedings in the conduct of the
election, or in the return of the vote, were so tainted with
fraud that the truth cannot be deduced from the returns. The
rule is thus stated in *Howard v. Cooper*, (1 Bartlett, p. 275 :)
' When the result in any precinct has been shown to be so
tainted with fraud that the truth cannot be deducible there-
from, then it should never be permitted to form a part of the
canvass. The precedents, as well as the evident requirements
of truth, not only sanction, but call for, the rejection of the
entire poll, when stamped with the characteristics here shown.'

" Sec. 437. The rule just stated needs the following ex-
planation, in order that it may be correctly understood. The
committee no doubt meant to say that if the result, *as shown
by the returns*, is tainted with fraud, the returns are to be re-
jected as false and worthless. But as we have elsewhere seen,
the question whether the entire vote of the precinct shall be
rejected for fraud, depends upon another question, viz. :
Whether from any evidence it is possible to ascertain the true
result. The returns may be rejected as fraudulent, and yet
the true vote may, in some cases, be ascertained, and where it
can be ascertained, independently of the rejected returns, the
law requires that it be respected and enforced. Where the
true vote cannot be ascertained either from the returns or from
evidence *aliunde*, the vote of the precinct is to be rejected.

" Sec. 438. The return must stand until such facts are
proven as to clearly show that it is not true. When shown
to be fraudulent or false, it must fall to the ground. This
ruling is well settled by numerous authorities, including the
following: *Blair v. Barrett*, 1 Bartlett, 308; *Knox v. Blair*,
1 Bartlett, 520; *Howard v. Cooper*, supra; *Washburn v. Voor-
hees*, 2 Bartlett, 54."

It will make no difference, so far as this case is concerned,
whether the vote of Syracuse township be wholly ignored, or
only so much of it as is unquestionably fraudulent. In either
case, the result reached must be precisely the same. In either
case, no place can be considered as having received a majority
of all the legal votes, and therefore no place can be considered
as having become the permanent county seat of the county.
We think, however, that the election in Syracuse township

and the returns thereof are of such a fraudulent character that the entire vote of that township must be wholly ignored. There were not merely a few scattering illegal votes cast in that township, but a great fraud was committed therein; participated in by the judges and the clerks of the election, and by a large proportion of the inhabitants of the township. It is certain that more than two-thirds of all the votes claimed to have been polled in that township are illegal and fraudulent; and how many of the others are illegal and fraudulent cannot be ascertained with any degree of accuracy. Possibly a large number of them are. It is also certain that more votes were polled in Syracuse township for the town of Kendall than the poll-books show; and whether there were not many other frauds committed of a similar character is left in doubt and uncertainty. The poll-books, the returns, and the canvass thereof, being so thoroughly impeached as they have been, cannot be considered as furnishing any evidence upon these questions. They cannot be considered as any evidence of the number of legal votes polled, nor of the place for which they were polled. And there is really no competent evidence upon this subject. Everything tending to show what the honest vote in Syracuse township was, is left in uncertainty and doubt. Hence, considering the fraud perpetrated there, that vote must not and indeed cannot be counted.

A peremptory writ of mandamus will be awarded, commanding the defendants to hold their offices at Kendall, the temporary county seat of Hamilton county.

All the Justices concurring.