## SHAW et al. v. CIRCUIT COURT OF HAMLIN COUNTY.

Prohibition is an appropriate proceeding to test the jurisdiction of the circuit court to issue an order restraining the county commissioners from removing their offices pending the determination of a contest of an election on the question of removal.

Where contest of an election on the question of removal of a county seat is instituted, the result of the election cannot be ascertained and announced until the determination of the contest in the courts, within the meaning of the law requiring county officers to keep their offices at the county seat.

An allegation in an answer to a petition for a writ of prohibition contesting the jurisdiction of the circuit court to grant injunction to restrain the removal of the county seat until final determination of the contest that the election was not carried by a two-thirds majority, as required by law, stands admitted by a demurrer to the answer.

Where the circuit court has jurisdiction to issue a temporary injunction against the removal of the county offices to another town pending the determination of a contest of the election at which the removal of the county seat was submitted, the grant of such injunction is within the discretion of the circuit court, with the exercise of which the Supreme Court cannot interfere except on a showing of abuse.

An election on the question of the removal of a county seat was determined by the canvass of votes to have been carried for removal by less than two votes over the necessary two-thirds in a total vote of 1,886. A contest was started alleging numerous frauds and irregularities, not only in the election, but also in the submission of the question. **Held,** that there was no abuse of discretion in grant-

ing a temporary injunction restraining the county officers from removing their offices pending the determination of the contest.

(Opinion filed February 1, 1911.)

Petition by William B. Shaw and others for a writ of prohibition against the Circuit Court of Hamlin County. Denied.

*John Hanten* and *Joe Kirby,* for petitioners. *Hall, Roddle & Purdy* and *W. N. Skinner,* for defendants.

SMITH, P. J. On the 8th of July, 1910, a petition was filed in the office of the county auditor of Hamlin county, requesting the board of county commissioners to submit at the general election in November, 1910, the question of the removal of the county seat of said county from the town of Castlewood to Hayti, and on that date the county commissioners passed a resolution granting the petition. Pursuant to this resolution, the question was submitted to the voters on the 8th day of November, 1910, and, the vote having been canvassed, it was ascertained and determined by the board that 1,886 votes were cast at said election, 1,259 of which were in favor of the removal of the county seat from Castlewood to Hayti, and that the proposition for the removal of said county seat had received 2-3 of the votes cast with 1 2-3 votes in excess of the number required. On the 14th of November, 1910, an injunction action was begun in the circuit court of Hamlin county by one N. L. Strait as plaintiff, and the board of county commissioners and the county officers of said county were made defendants. The complaint set forth the various proceedings preliminary to the election, the submission of the question of removal thereat, the holding of the election and the canvass of the votes, and the result as declared by the canvassing board, and further alleges that the plaintiff has commenced or is about to commence proceedings under the provisions of article 13 of chapter 19 of the Political Code of this state as amended for the purpose of contesting said county seat election, and has obtained, or is about to obtain, an order from the circuit judge of said county authorizing him to contest the validity of the election. Complainant further alleges upon information and belief that less than two-thirds of the legal voters of said county of Hamlin voted at the

election in favor of the removal of the county seat from Castle-wood to Hayti; that numerous votes were cast in favor of said removal by persons who were not qualified voters, and that the number of such illegal ballots was sufficient to change the result; that numerous ballots, the exact number of which is unknown to plaintiff, were counted by the precinct judges in favor of removal, which were void and should have been thrown out because of marks of identification thereon; that ballots improperly marked were counted by precinct judges in favor of removal, which should not have been so counted, in that the word "Yes" on the ballots was erased by a cross, but that no cross was placed either before or after the word "Yes" or before the word "No," and that such ballots were improperly counted and returned as votes in favor of removal; that errors were made by precinct judges in canvassing and counting ballots; that one of the election judges before election made a bet or wager that a majority of the votes cast in the precinct of which he was judge would be cast in favor of removal, and informed five of the voters of said precinct that, if they would exert their efforts to see that he won the wager, he would divide the proceeds with them; that said judge while the voting was in progress electioneered in favor of removal, and that the result of such improper conduct was shown in that in his precinct 165 votes were cast in favor of said proposition and 77 votes against; that various persons were induced to vote in favor of removal by threats and intimidations; that in several of the precincts the judges were not sworn to perform their duties as required by law. Plaintiff further alleges that all of said acts and omissions will be more fully specified and investigated in the contest proceeding which plaintiff is about to institute as thereinbefore stated, and alleges the fact to be that less than two-thirds of the legal votes cast at said election were in favor of removal, and that this fact will be shown by a recount of the ballots cast at the election; that many duplications of names appear on the petition for submission of the question of removal, and that certain signers of said petition were not qualified voters at the time of signing the same, and that the petition was not signed by a majority of the legal voters of

the county; that the question of removal as submitted and voted upon does not designate the particular place in said county to which said county seat was sought to be removed, but that it was designated merely as Hayti, Hayti being the name of an organized township of the county, and there being no incorporated town or village by that name in said county; that the defendants, officers of said county, are in possession of the county records and files pertaining to their respective offices, which are now in the court-house in Castlewood where adequate provision exists for their protection and safety in vaults and safes, and that said records and files should of right remain where they are until after the court shall have determined the validity of the election in contest proceedings, and all matters should be preserved in status quo until such decision is made; that threats have been made by various persons, including defendant Jorgenson, sheriff, that the records, files, and property of said county of Hamlin would be removed to Hayti, and plaintiff demands an injunction order restraining said, defendants from removing the county records, files, and property from Castlewood to Hayti pending the contest proceedings. Plaintiff further alleges that to permit the removal of the files and property before the determination of the contest and of this action would work irreparable injury to this plaintiff and other taxpayers and voters of said county similarly situated, and would cause a multiplicity of suits, and would tend to render any judgment which the court might render in the contest proceedings nugatory, and would be contrary to public policy and in violation of plaintiff's rights, and that plaintiff has no adequate, proper, or speedy remedy at law. Plaintiff prays that the defendants be restrained and enjoined during the pendency of this action, and permanently, from removing the records, files and property, and for general relief. This complaint verified was presented to the circuit court of Hamlin county on the 14th of November, 1910, and upon the allegations therein contained a temporary order was issued restraining the defendants from removing the records, files, or property from Castlewood during the pendency of the contest proceedings therein referred to. Thereafter, on the 28th day of

November, 1910, the board of county commissioners, defendants in this action, filed an answer to the complaint, alleging that the complaint does not state facts sufficient to constitute a cause of action, and that the plaintiff has a full and adequate remedy at law, and admitting and denying various allegations in the complaint, and further alleging that on the 15th of November the plaintiff filed and served a notice of contest wherein the said board of county commissioners is made defendant, contesting the removal of the county seat from Castlewood to Hayti, and in said contest plaintiff seeks to have the result of the election set aside; that said contest proceeding is now pending and undetermined; that on the 3d of December, 1910, the plaintiffs, as defendants in said injunction action, moved the circuit court of Hamlin county to dissolve and set aside the aforesaid temporary injunction, which application was denied. The plaintiffs in this action, as members of the board of county commissioners of Hamlin county, by their petition containing full recitals of all the foregoing proceedings, demand the issuance of a writ of prohibition alleging that the circuit court of Hamlin county in granting a temporary injunction acted without and in excess of its jurisdiction, and in violation of the laws of this state and particularly section 2362 of the Civil Code, and demanding an order and judgment of this court prohibiting the continuance of the injunction, and for other relief. Plaintiff demurs to the answer in this court on the ground that the facts stated do not constitute any defense, or show any reason why the relief sought by the plaintiff should not be granted. In support of the demurrer, plaintiff contends that the removal of a county seat is primarily a political, and not a judicial, question; that the effect of the temporary injunction was to suspend the operation of sections 793, 1820, 1821, Pol. Code, the former section requiring the defendants within 30 days to remove their offices to the new location, the other sections making defendants guilty of a misdemeanor for failing to keep their offices at the county seat. The contention of plaintiff is that an injunction cannot be granted to prevent the execution of a statute for the public benefit by officers of the law, and that the plaintiff or other private

citizens suffered no damage not in common with the rest of the public, and, not claiming any special injury by reason of the alleged illegal acts, cannot maintain the injunction action. The vital question is whether the circuit court of Hamlin county has jurisdiction in an action in equity to make a temporary or final order restraining defendants from removing the county offices and property pertaining thereto from the town of Castlewood to the town of Hayti pending the final determination of the contest proceedings to test the validity of the election.

Prohibition is the appropriate proceeding to test the question of the jurisdiction of the circuit court of Hamlin county to issue the order restraining defendants from removing their offices pending the determination of the contest proceedings. If it be conceded that the purpose of the action in the circuit court be to take jurisdiction of matters involved in the contest proceeding, the jurisdiction of that court might well be questioned. In 10 Cyc. 816, it is said: "The right to contest elections is purely a statutory right and courts of equity have no jurisdiction 'ratione materiæ' to determine the contest of an election because of irregularity or fraud in the conduct of the election, and the fact that no provision is made by statute for a contest will not confer such jurisdiction." This rule appears to be sustained by the great weight of authority where no question of fraud or want of power to order or hold an election is involved. In Hipp v. Charlevoix County, 62 Mich. 456, 29 N. W. 77, it is held that the canvass of the board to determine the result of an election held by order of the board of supervisors of the county by a two-thirds vote at a meeting in which all the towns were represented for the purpose of determining the location of the county seat is conclusive. Chief Justice Campbell in delivering the opinion said: "The questions are not such as the courts have any right to disturb after they have been disposed of by the only authority which the law has empowered to act upon them. The supervisors at a meeting where all the towns were represented by a two-thirds vote ordered an election to determine upon the proposed removal of the county seat. This election was held and the board determined the result upon a canvass. That

action is conclusive, and no authority exists anywhere to dispute it. The controversy, which is not in any proper sense a judicial one, is closed. The Constitution has not empowered this court to settle controversies not judicial, which are wisely left to the proper local and representative agencies of the people." The precise questions under consideration by the court in that case are not disclosed by the record, and, if the case be considered as holding that a proper and legitimate exercise of purely political power cannot be controlled or interfered with by the courts, it must be conceded that the conclusion reached is sustained by an overwhelming weight of authority. But, where fraud or a total want of power on the part of the political agency employed is involved, the question is an entirely different one, and, where either fraud or want of power appears, judicial decisions are not wanting which hold that courts may interfere with the results of such elections where they may involve the wrongful expenditure of public moneys to the injury of the voters and taxpayers. And authorities even go beyond this, where through fraud, constitutional provisions may be rendered inoperative or defeated.

The Illinois Constitution declares that a certain vote must be taken before a county seat may be removed, and in the case of Boren v. Smith, 47 Ill. 482, it is said: "In making that provision it is manifest that it was designed that the will of the majority of the legal voters of the county should control. It would defeat that object and render this fundamental provision inoperative, if the sense of the majority of the legal voters constitutionally expressed might be overcome by illegal votes or fraudulent means. * * * But, if our courts of equity were in the absence of legislative action to refuse relief, this constitutional provision could by fraud be rendered inoperative and wholly defeated." And in State v. Eggleston, 34 Kan. 714, 10 Pac. 3, it was held that an injunction would lie to prevent a canvass of the votes for the removal of a county seat, where the petition for the election was illegal. Similar conclusions are announced in State v. Hamilton County, 35 Kan. 640, 11 Pac. 902; Doan v. Logan Co., 3 Idaho (Hasb.) 38, 26 Pac. 167; Sweatt v. Faville, 23 Iowa, 321; Rice v.

Smith, 9 Iowa, 570; Gibson v. Trinity Co., 80 Cal. 359, 22 Pac. 225; Calaveras Co. v. Brockway, 30 Cal. 325; Maxey v. Mack, 30 Ark. 472; Dickey v. Reed, 78 Ill. 262; People v. Wiant, 48 Ill. 263.

On the other hand, it was held in Parmeter v. Bourne, 8 Wash. 45, 35 Pac. 586, 757, that a court of equity had no jurisdiction to determine the result of such an election, even though there had been fraud in canvassing the votes. In the case of Rickey v. Williams, 8 Wash. 480, 36 Pac. 482, taxpayers brought suit in equity to enjoin the removal of the county seat from Coleville to Kettle Falls. A finding had been made by the board of county commissioners that one-third of the total number of voters had signed the petition, but on the trial it appeared conclusively that the petition did not have the requisite number of legal signers. The court held that the action of the board in submitting the question of removal was unauthorized, and that the election was invalid and granted the relief asked. In that case the court says: "Considered in the abstract, it must be admitted that such question is a political question, but when it appears that such changed location involves the expenditure of a large sum of public money, which would otherwise be unnecessary, no good reason is apparent why the removal thereof may not be enjoined in case the election was void." The court expressly held that an injunction would lie at the suit of a county officer to enjoin the removal of the county seat when the board of county commissioners had never obtained jurisdiction by a proper petition to order the submission of the question to a vote, and distinguished the case from Parmeter v. Bourne, 8 Wash. 45, 35 Pac. 586, 757, where an injunction was sought to restrain the removal of a county seat, saying: "There was no question in that case of the jurisdiction of the board to call the election, but the questions raised related to matters upon which the board of commissioners or the election board had passed or had presumptively passed, after having obtained jurisdiction in the premises." The complaint in the latter case alleged fraud in the counting of the votes by the judges of election, and in issuing fraudulent returns to the board of county

commissioners. The court says: "The statement of facts set up in the complaint appeals to us very strongly for relief, and shows an aggravated case of perverting the election laws, and thwarting the will of the voters, and had we the authority we would gladly place the parties upon the proof of their allegations. But, from an investigation of the law involving the origin, the history, and the jurisdiction of the courts of equity, we are forced to the conclusion that the court has no jurisdiction over this case; and, lamentable as it may be that the voter is left remediless to have his vote counted for the place of his choice, it would be still more lamentable for a court, which is but a creature of the law, to assume jurisdiction which is not conferred upon it by law, or to usurp the functions of those tribunals in which the lawmaking power has reposed confidence, and upon which it has imposed discretionary powers over this subject-matter. A court of equity is not entirely a free lance which can be wielded independently of law or regulation. It is just as subservient to and dependent on the law so far as its jurisdiction is concerned as is a court of law." The later case of Krieschel v. County Commissioners, 12 Wash. 428, 41 Pac. 186, was an action in equity to enjoin the removal of a county seat pursuant to a pretended submission of the question to a vote. Upon the filing of the complaint, a temporary restraining order was issued, and on the return day the complaint was attacked on the ground that it failed to state sufficient facts to entitle the plaintiff to the relief demanded. A temporary injunction was ordered, to reverse which the appeal was prosecuted. Upon the appeal it was urged that the trial court had no jurisdiction of the subject matter of the controversy, under the rule announced by that court in Parmeter v. Bourne, supra. But the court held that the pretended canvass and action of the board was not merely illegal, but absolutely void, and constituted no foundation or authority for the order and declaration entered upon the record. The action of the board was declared to have been fraudulent, in violation of the law, and contrary to their knowledge of the facts, and the relief was granted.

In Board of Supervisors v. Buckley, 85 Miss. 713, 38 South. 104, a suit to restrain the removal of a county seat, it was held

that an order of the board of supervisors declaring the proposition for the removal of the county seat carried, from which no appeal had been taken, may be collaterally attacked in a suit to restrain the execution of the order where the record of the board shows that its action was in excess of its jurisdiction, and that the proposition had not carried by a two-thirds vote of all the qualified electors of the county as required by the Constitution. The statute of that state apparently authorized an appeal from the order of the board of supervisors, and, no appeal having been taken, it was urged that the order of the board was final and conclusive and could not be collaterally attacked, that, as the presentation of the petition vested the board of supervisors with jurisdiction to call an election, this necessarily carried with it the power to decide how the election resulted, and that the decision of the board must stand until reversed by direct appeal. The court held this contention unsound, and said: "The power of the board to order a removal of the seat of justice did not depend on the recitation by the board in its order that two-thirds of the electors voted for removal, but upon the actual existence of the concrete fact. If such number did not vote for removal, the board had no authority to make any order, for the reason that the power by which alone the location of a county site can be changed cannot be put in motion except by the positive action of the voters. Until this action is taken, the power remains dormant, and the county site cannot be moved. If the constitutional majority fail to vote favorably on the question of removal, no order is required, because the contingency on which alone a change can be made has not happened, and the jurisdiction of the board over the subject-matter has never attached."

Under a Florida statute the boards of county commissioners were authorized to order an election upon the question of the location of a county site upon the presentation of a petition signed by one-third of the registered voters, "praying for a change of the location of such county site." Lanier et al. v. Padgett et al., County Commissioners, 18 Fla. 842, was an action to enjoin county commissioners from making an order or doing any act in

the direction of effecting a change of the location of the county site, and the removal of the county offices and records by reason of the result of an election previously held. The election was alleged to have been illegal because the petition addressed to the board did not express a desire for a change, nor ask that an election be held to change the location of the county site. The application for a restraining order was denied below and plaintiffs appealed. The court says: "It is plain that in such cases the board of county commissioners cannot lawfully call an election for a location of the county site unless a petition is presented to them signed by one-third of the registered voters of the county. And from whom must the petition come? It is equally clear that it must come from registered voters who desire a 'change of the location.' Unless such petition is presented, the board cannot act, for that is the precise condition prescribed by the law. A petition asking the board to call an election 'for the purpose of legally locating the courthouse' or 'desiring that the question of a county seat be settled so that suitable buildings may be erected for the business of the county,' and asking that an election be called for the purpose of locating the county site (as these petitions are variously expressed), do not purport to emanate from or to be signed by voters desiring a 'change' of location." The court further says: "The result is that the election held under the order of the county commissioners as alleged was not authorized by law, and the result of the election could not effect a change of the location of the county site. Under the general prayer of the bill that the members of the board of commissioners be enjoined from making any order or doing any act in the direction of effecting a change of the location of the county seat and the removal of the county offices and records by reason of the result of the election, an injunction should have been granted. The injunction prayed was not to restrain the members of the board as canvassers of the result of an election, but to restrain them from acting upon the result of an unauthorized election. They would, therefore, be not enjoined from doing what the laws required them to do, but from doing an unlawful act." The court held that complainants

as taxpayers had a standing which entitled them to a remedy against threatened wrongful proceedings which might involve them and the whole people of the county in great expense and confusion and jeopardize the titles to property. A decree refusing an injunction was reversed, and the cause remanded, with directions to allow the injunction and for such further proceedings as are authorized by the equity practice of the court.

In Stuart et al. v. Bair et al., 8 Baxt. (Tenn.) 141, it was held that citizens and taxpayers of a county may file a bill to restrain public officers and others from illegally removing a county seat. Relief was granted on the ground that certain pretended orders were made with the fraudulent purpose of removing the county seat from Newport to Clifton against the wishes of the people of the county. The court held that, the proceeding not being in the mode prescribed by law, the county site had not been legally removed, and that an injunction would lie.

In Way v. Fox, 109 Iowa, 340, 80 N. W. 405, an injunction was granted to restrain the removal of county books and records, and a writ of certiorari was sued out to test the legality of proceedings of the county board for changing the site of the courthouse. Upon review, the action of the board of county commissioners was held absolutely void, and an attempted evasion of the proceedings prescribed by statute for the removal of a county seat. The court says: "We think that certiorari is the proper remedy by which to test the legality of the proceedings of the board of supervisors, and that an injunction will lie to restrain the removal of the books and records."

In Mitchell et al., Commissioners, v. Lasseter et al., 114 Ga. 281, 40 S. E. 290, which was an action to enjoin the board of county commissioners from removing county records from Abbyville to Rochelle, and establishing the latter place as the county site of the county, the court says: "It is contended by the plaintiffs in error that the judge erred in granting the injunction, for the reason that the plaintiffs in the court below had no right to maintain their action, because the board of commissioners in locating the county site under authority of the acts of 1857 and

1879 were engaged in the exercise of a legislative act, which could not be controlled by the courts. Under the view we have taken of the case, this contention of the plaintiffs in error must fail, because the board of county commissioners had no authority to pass the order locating the county site at Rochelle, and the order was absolutely null and void. No act done thereunder would be binding upon the county. As the board of commissioners were threatening to carry this order into effect, and in doing so would necessarily expend the money of the taxpayers, certainly the taxpayers of the county, or any one or more of them, had a right to appeal to a court of equity to prevent this unauthorized use of public money."

In Heffner v. Board of County Commissioners, 16 Wash. 273, 47 Pac. 430, the court followed the Michigan court in Pinkerton v. Staninger et al., 101 Mich. 273, 59 N. W. 611, holding that the decision of the supervisors in canvassing and determining the vote upon the question of the removal of a county seat is conclusive under any circumstances for the reason that no judicial review of their action is provided by law. The court says: "Their acts may be unwarranted by the facts, but, until the Legislature shall provide some method for a judicial review of their action, the courts cannot interfere." The power of the Legislature to provide for a judicial review of such action, even though political in character, is not questioned. Apparently the Legislature has made no provision for contesting such elections in those states, and the courts there follow the well-settled rule that courts of equity will not review the action of boards or officers where they are wholly political in character. But the reasons given for these decisions are not controlling here, where the Legislature has made election proceedings reviewable by the courts in contest actions. But, even if these decisions may be interpreted as holding that because the acts involved are political in character the courts shall not interfere to prevent the consumation of fraud which may result in defeating the law and the will of the people, we do not wish to be understood as concurring in such views. We believe the rule announced by the learned Supreme Court of Illinois in Boren v. Smith, supra,

that constitutional provisions may not be rendered inoperative and wholly defeated because courts of equity will refuse relief in such cases, is founded in better and sounder reason. In interfering to prevent the consummation of fraud which may result in defeating to review or control political action, but only to preserve its integrity to the end that the law conferring such authority may not be defeated in its purposes by fraudulent acts. We believe no fears need be entertained that courts of equity will ever attempt to exercise other than strictly remedial powers in such cases. In 1 Pomeroy's Eq. Rem. p. 352 (5 Pomeroy, Equity Jurisprudence), that distinguished author says: "Taxpayers frequently have sought to invoke the aid of equity to prevent the removal of a county seat. In a sense this is a political matter, but, on the other hand, it may involve a waste of a large sum of money, and thus be a great and direct injury to the taxpayers. The tendency of the modern authorities therefore is to allow an injunction when it appears that the illegal removal will result in a waste of public funds. Applying these principles, injunctions are allowed when the election authorizing the removal is void because of failure to take the proper preliminary steps or because not authorized by statute. For the same reason when the removal is legal an injunction will issue to prevent the erection of an expensive county building at the old site." In the case of Todd v. Rustad, 43 Minn. 500, 46 N. W. 73, an action to enjoin the removal of the offices, records, and other property of the county pursuant to an election to relocate the county seat, the court says: "As respects proceedings instituted and carried on for the removal of county seats, the statute has provided a summary and adequate mode of procedure for contesting their regularity and validity. The county officials and the public generally may assume that there will be no contest involving such questions, unless the same is instituted within 30 days after the vote is declared. The courts will not, therefore, entertain an independent action for a permanent injunction, the determination of which must necessarily involve the investigation and trial of questions which would be properly investigated and finally disposed of in a statutory contest. That would be equiva-

lent to allowing a contest to be made by suit independently of the statute.   (2) An action for a permanent injunction restraining the removal of a county seat or the expenditure of public funds, or the creation, unlawfully, of public indebtedness for the erection of county buildings, may, however, be maintained on the ground of an entire absence of legal authority to do the acts complained of, as, where the proceedings threatened are under a statute which is unconstitutional, and are wholly unauthorized and void, we see no reason why a citizen and taxpayer should not in such case have the same right to his remedy by injunction, in a proper case, to restrain the unlawful removal of the county offices as to his remedy by mandamus to compel their restoration to the county seat.   State v. Weld, 39 Minn. 428, 40 N. W. 561; 2 High, Inj. p. 1321."

The record before us discloses that contest proceedings under the statute have been instituted and are now pending in Hamlin county to test the validity of the election for removal of the county seat from Castlewood to Hayti.   Among other things, it is alleged in the answer to the petition for the writ herein that the town of Hayti did not receive the two-thirds vote required by the Constitution of this state.   And for the purposes of this proceeding that allegation stands admitted by the demurrer of plaintiff to the answer filed in this proceeding.   This admission cannot be held to clothe this court with jurisdiction to try the questions properly involved in the contest proceeding.   It may, however, be considered in aid of the jurisdiction of the circuit court of Hamlin county in the equity proceeding, in which it is sought to enjoin the removal of county officers and county property from Castlewood to the town of Hayti pending the determination of the statutory contest.   The whole force and effect of the injunction whether permanent or temporary could only be to suspend the removal of the county offices and county property from Castlewood to Hayti until the final determination of the contest.   When that contest has reached its final determination, the force and effect of the injunction, temporary or permanent, is ended.   The injunction in no manner interferes with the contest proceeding itself.   It

affects only the actions of these defendants as public officers, and requires them to await the result or determination of the contest. The officers affected by the injunctional order are not parties to the contest proceeding in a technical sense, and have no other or further interests in the result of that proceeding than other citizens of the county. If it be conceded, as it must be upon the record before us, in this proceeding—and for that purpose only—that the attempted removal of the county seat from Castlewood to Hayti is in contravention of the constitutional provision requiring a two-thirds vote, an attempted removal of the county offices and county records from the town of Castlewood to another town not the county seat of said county would be unlawful, and in violation of the duties of county officers who are made defendants in the injunction suit. It would seem under the authorities cited, and many others examined but not referred to, that any voter or taxpayer of the county may maintain an injunction action to restrain and prevent such unlawful removal. It cannot be doubted that such removal would result in loss and injury to the taxpayers of the county, and might result in confusion in matters involving the transaction of public business. It is contended by petitioner that county officers are required under criminal penalty to remove and to keep their offices at the county seat. But must these officers at the peril of criminal prosecution be required to determine which of the towns is the lawful county seat? The same law which authorizes the relocation of the county seat by the voters of the county also authorizes the contest proceeding in which the legality of the election shall be finally determined, and shall these county officers be required at their peril to determine in advance the outcome of such contest? If these defendants should remove the offices to Hayti, and it should be determined thereafter in the contest proceeding that the election was illegal and void, and that the county seat remained at all times at Castlewood, would it be contended that these defendants must be held criminally liable for a failure to keep their offices at the county seat? We cannot adopt a construction of the statute which would work out results so absurd and unjust. We think it may be fairly held, where contest

proceedings are instituted, that the result of the election is not, and cannot be, ascertained and announced within the meaning of the law requiring officers to keep their offices at the county seat until the final determination of the contest in the courts. The jurisdiction of the circuit court of Hamlin county to entertain the injunction action must be sustained. The issuance of the injunctional order was an exercise of the legal discretion of that court and cannot be reviewed here, unless it be shown that such legal discretion has been abused. Upon the record before us, we cannot so hold.

It follows that the demurrer to the answer in this case must be overruled and the petition for a writ denied; and it is so ordered.